# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

SERRITA S. A.,[1]

        Plaintiff,

    v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

        Defendant.

Case No. 8:24-cv-02563-AJR

**MEMORANDUM DECISION AND ORDER**

## I.

## INTRODUCTION

Serrita S. A. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge. (Dkts. 5, 6.) For the

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Commissioner Frank Bisignano is substituted in as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

reasons stated below, the decision of the Commissioner is REVERSED, and this case is REMANDED with directions to award Plaintiff benefits immediately.

## II.

## PROCEDURAL HISTORY

On February 24, 2020, Plaintiff filed her application for DIB, alleging disability beginning on October 16, 2018.  (Dkt. 10-6 at 6-9.)  The Commissioner denied the claims by initial determination, (Dkt. 10-4 at 2-6), and upon reconsideration.  (Id. at 28-42.)  Plaintiff filed a written request for hearing on October 20, 2021.  (Dkt. 10-5 at 19-20.)  On April 7, 2022, Administrative Law Judge Stacy Zimmerman (the "ALJ") conducted a hearing by telephone[3] and subsequently published an unfavorable decision on April 20, 2022.  (Dkt. 10-3 at 15-27, 32-53.)  Plaintiff requested review of the ALJ's decision by the Appeals Council on June 2, 2022.  (Dkt. 10-5 at 92-97.)  The Appeals Council denied Plaintiff's request for review on March 30, 2023.  (Dkt. 10-3 at 2-7.)

On May 12, 2023, Plaintiff filed a complaint with this Court in Serrita S.A. v. Comm'r, Soc. Sec. Admin., Case No. 8:23-cv-00831-AJR.  (Dkt. 10-14 at 27-29.)  On January 2, 2024, this Court reversed the decision of the Commissioner and remanded on the grounds that the ALJ failed to address Social Security Ruling ("SSR") 03-2p.  (Id. at 30-40.)  On March 5, 2024, the Appeals Council remanded Plaintiff's case to an ALJ.  (Id. at 43-47.)

On remand, the same ALJ presided over Plaintiff's case.  (Dkt. 10-13 at 2-49.)  On August 21, 2024, the ALJ conducted a telephonic hearing and subsequently published an unfavorable decision on September 20, 2024.[4]  (Id.)  As Plaintiff did

_____

[3] The ALJ conducted the hearing telephonically due to the COVID-19 pandemic.  (Dkt. 10-3 at 15.)  Plaintiff was represented by an attorney at the hearing and agreed to conduct the hearing telephonically.  (Id. at 15, 34-35.)

[4] Plaintiff was represented by an attorney at the hearing and agreed to conduct the hearing telephonically.  (Dkt. 10-13 at 36-38.)

not file written exceptions and the Appeals Council did not assume jurisdiction, the ALJ's decision became the final decision of the Commissioner on the 61st day, November 20, 2024.[5]  See 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.984(d), 416.1484(d).  Plaintiff now seeks review of the ALJ's final decision.

## III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  See 20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)    Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[5] Ordinarily, an ALJ's decision becomes the Commissioner's "final decision" only if the Appeals Council denies review or issues its own decision.  See 20 C.F.R. §§ 404.955, 404.981.  However, where, as here, the case is remanded by a federal court, different rules apply.  Under 20 C.F.R. §§ 404.984 and 416.1484, if the claimant does not file written exceptions to the ALJ's decision within 60 days, and the Appeals Council does not assume jurisdiction, the ALJ's decision automatically becomes the Commissioner's final decision.

(3)     Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)     Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)     Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.  See Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  See id. at 954.  If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

\\

\\

# IV.

## THE ALJ'S DECISION

On remand, the ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Dkt. 10-13 at 2-26.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date, October 16, 2018, through her date last insured, December 31, 2023. (Id. at 7.)  At step two, the ALJ found that Plaintiff had the following severe impairments: complex regional pain syndrome ("CRPS") of the right upper extremity; right cubital tunnel syndrome; cervical radiculopathy; obesity; and depressive disorder (20 CFR 404.1520(c)). (Id. at 8.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Id. at 9.)

The ALJ assessed Plaintiff's RFC and concluded that she could perform "light work, as defined in 20 CFR 404.1567(b), with the following specific limitations: can lift and carry twenty pounds occasionally and ten pounds frequently; can stand and walk six hours in an eight-hour day; can sit six hours in an eight-hour day; can occasionally push and pull; can frequently climb, balance, stoop, kneel, crouch, and crawl; can frequently walk on uneven terrain or be exposed to heights; can frequently reach, handle, and finger with the right arm and hand; can perform simple tasks in a routine work environment; and can perform low stress work, which is defined as involving only occasional, simple decision-making and occasional changes in the work setting." (Id. at 11 (bold omitted).)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements, and the generally corroborating statements provided by Mark S[.] A[.], her brother, concerning the intensity, persistence, and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the above reasons." (Id. at 24.)

At step four, the ALJ found that Plaintiff had no past relevant work. (Id.)  At step five, the ALJ determined that "[t]hrough the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed." (Id. (bold omitted).)  Specifically, the ALJ found that Plaintiff could perform the requirements of "representative occupations" such as:  (1) housekeeper cleaner: DOT #323.687-014, SVP 2, light exertional level, 100,000 jobs available nationally; (2) office helper: DOT #239.567-010, SVP 2, light exertional level, 40,000 jobs available nationally; and (3) assembler: DOT #706.684-022, SVP 2, light exertional level, 75,000 jobs available nationally.  (Id. at 25.)  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Act from the alleged onset date, October 16, 2018, through the date last insured, December 3, 2023.  (Id. at 26.)

## V.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  See Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir.

1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."  Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  See Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.

### DISCUSSION

Plaintiff identifies five grounds for relief all related to her severe impairment of CRPS of the right upper extremity.  First, Plaintiff contends that the ALJ failed to properly consider Plaintiff's severe impairment of CRPS.  (Dkt. 11 at 7-9.)  Second, Plaintiff contends that the ALJ improperly considered the persuasiveness of various medical opinions.  (Id. at 9-14.)  Third, Plaintiff contends that the ALJ's RFC concerning Plaintiff's upper right extremity is not supported by substantial evidence.  (Id. at 14-17.)  Fourth, Plaintiff contends that the ALJ failed to properly assess Plaintiff's testimony regarding pain and limitations caused by her CRPS.  (Id. at 17-25.)  Finally, Plaintiff contends that the ALJ improperly rejected a third-party report from Plaintiff's brother regarding Plaintiff's pain and limitations caused by her CRPS.  (Id. at 25-26.)

**A.**   **The ALJ's RFC Determination Fails To Account For Limitations Assessed By Plaintiff's Treating Physicians.**

As set forth above, all of Plaintiff's grounds for relief are related to her CRPS of the right upper extremity.  The Court begins with Plaintiff's second and third grounds for relief because they capture the core of the error in this case and are

7

dispositive of Plaintiff's application for benefits.  In her second claim for relief, Plaintiff contends that the ALJ improperly rejected the opinions of her treating physicians, Dr. Christopher Vercammen-Grandjean, Dr. Amirtha Ajit, and Dr. Ammar Dahodwala (together, the "Treating Physicians").  (Dkt. 11 at 9-14.)  In her related third claim for relief, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to incorporate the limitations assessed by Plaintiff's Treating Physicians related to her severe impairment of CRPS.  (Id. at 14-17.)  Specifically, Plaintiff contends that the ALJ failed to properly consider the persuasiveness of the Treating Physicians' opinions concerning absenteeism.  (Id. at 12-13.)  Plaintiff's Treating Physicians opined that Plaintiff would be absent from work more than four days a month due to her impairments.  (Dkt. 10-13 at 19-21 (citing Dkt. 10-11 at 98; Dkt. 10-18 at 5, 339; Dkt. 10-20 at 71).)  Moreover, the VE testified that such a limitation would preclude an individual from "maintaining or sustaining any competitive employment."  (Dkt. 10-13 at 48.)  Therefore, Plaintiff contends that the ALJ erred by failing to address absenteeism as a possible functional limitation.  (Dkt. 11 at 10-13.)

**1.      Legal Standard For Formulating The RFC.**

In social security appeals, the ALJ alone determines a claimant's RFC after consideration of "all the relevant evidence in [the] case record."  20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician to determine residual functional capacity.").  In formulating an RFC, the ALJ weighs medical opinions, non-medical source opinions, and the claimant's credibility.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").  An ALJ need not adopt any one medical opinion but instead translates the claimant's physical condition into work-related restrictions and

functions.  See Ly v. Colvin, 2014 WL 4795044, at *11 (E.D. Cal. Sept. 25, 2014).

An ALJ may not make proprietary determinations regarding the claimant's condition not reflected in the medical evidence.  See, e.g., Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); Javier A. G. v. Saul, 2020 WL 6940042, at *9 (C.D. Cal. Nov. 25, 2020) ("[A]n ALJ may not substitute his or her lay interpretation of raw medical data in making an RFC assessment in lieu of a qualified expert's medical opinion.").

### 2.    Relevant Medical Opinion Evidence.

#### i.    Dr. Christopher Vercammen-Grandjean's Opinion.

Dr. Vercammen-Grandjean has treated Plaintiff since January 2020, when she presented with complaints of CRPS in her right hand.  (Dkt. 10-8 at 606.)  After the initial visit, Dr. Vercammen-Grandjean noted that Plaintiff had an extension contracture of her right third digit, and some erythromelalgia and allodynia/dysesthesia on that side as well.  (Id.)  He also noted that Plaintiff had similar symptoms on her right lower extremity.  (Id.)  After conducting a physical examination, Dr. Vercammen-Grandjean diagnosed Plaintiff with CRPS of the upper limb.  (Id. at 607.)

From February 2020 through August 2020, Dr. Vercammen-Grandjean observed no cardiovascular abnormalities; no respiratory abnormalities; no gastrointestinal abnormalities; no integumentary abnormalities; normal gait; normal nails and digits without synovitis, tenderness to palpation, or soft tissue swelling; normal patellar reflexes; normal sensation in all four extremities; normal mood; and congruent affect.  (Id. at 656, 669, 698-99.)  However, for the same period, Dr. Vercammen-Grandjean also noted that Plaintiff continued to experience CRPS symptoms despite various attempts at intervention and management.  (See id. at 655,

682, 697.)  Specifically, on August 7, 2020, Dr. Vercammen-Grandjean noted that Plaintiff's pain was "unchanged" and was "waxing and waning."  (Dkt. 10-9 at 93.)  Dr. Vercammen-Grandjean observed that "some [of Plaintiff's] clinical entities fit w[ith] CRPS," but that she also had some atypical skin changes like symmetric bruising-type lesions on her knees and some livedo reticularis.  (Id.)

Dr. Vercammen-Grandjean's November 11, 2020 examination did not find any cardiovascular abnormalities, respiratory abnormalities, gastrointestinal abnormalities, or integumentary abnormalities, but found tenderness to palpation along the left lower extremity medial/lateral joint line, patella, tibial tuberosity, patellar tendon, and quadriceps tendon.  (Id. at 54.)  Dr. Vercammen-Grandjean also noted intact range of motion without pain or limitation, normal sensation in all four extremities, normal patellar reflexes, normal mood, and congruent affect.  (Id.)  Dr. Vercammen-Grandjean noted that although a prior MRI showed no significant disease, Plaintiff's symptoms were likely attributed to her CRPS.  (Id. at 52.)  Dr. Vercammen-Grandjean further noted Plaintiff presented with right arm pain in C5 distribution, some erythromelalgia, and swelling.  (Id.)

On December 2, 2020, Dr. Vercammen-Grandjean diagnosed Plaintiff with an acute left meniscal tear, although a subsequent MRI was not corroborative.  (Dkt. 10-11 at 46-47.)  On December 16, 2020, Dr. Vercammen-Grandjean recognized that Plaintiff's MRIs were largely unremarkable, which actually narrowed Plaintiff's diagnosis to CRPS.  (Dkt. 10-9 at 40.)  On December 18, 2020, Dr. Vercammen-Grandjean maintained a diagnosis of CRPS of Plaintiff's upper limb.  (Id. at 39; Dkt. 10-18 at 217.)  Additionally, on June 1, 2021, Dr. Vercammen-Grandjean noted that Plaintiff was still experiencing frequent flares of CRPS every few weeks.  (Dkt. 10-11 at 79.)

On February 2, 2022, Dr. Vercammen-Grandjean completed a RFC questionnaire, where he concluded that Plaintiff could sit for less than two hours in a workday and stand or walk for less than two hours in a workday, rarely lift even lift

10

less than ten pounds and never lift ten pounds, would require unscheduled breaks, could only occasionally perform movements of the neck, never climb, rarely twist, stoop, or crouch, never handle or finger bilaterally, never operate foot controls, had symptoms constantly severe enough to interfere with attention and concentration, and would miss more than four days of work a month.  (Id. at 92-98.)

On September 27, 2023, Dr. Vercammen-Grandjean provided a narrative statement detailing that Plaintiff had "complex regional pain syndrome of both hands, in addition to a more complex widespread myofascial pain syndrome."  (Dkt. 10-18 at 7.)  Dr. Vercammen-Grandjean explained that "[d]ue to [Plaintiff's] flare ups, she will need to take two to three days a week off from work completely."  (Id.)  Additionally, Dr. Vercammen-Grandjean stated that "during a workday occasional flare ups will occur[,] and she will need to take two to three hour breaks while the pain subsides."  (Id.)  Dr. Vercammen-Grandjean also stated that "[d]uring [Plaintiff's] flares she experiences pain and immobility in her hands and is unable to use them."  (Id.)  Dr. Vercammen-Grandjean further explained that "there is no cure or effective treatment for complex regional pain syndrome, as usual modalities for pain such as medication and therapy have caused side effects and therapy can actually worsen pain in these conditions."  (Id.)

On April 12, 2024, Dr. Vercammen-Grandjean completed a Medical Source Statement opining that Plaintiff suffers from CRPS with numerous symptoms, including, but not limited to, swelling, decreased or increased sweating, changes in skin color or texture, skin temperature changes, abnormal pilomotor erection (gooseflesh), and involuntary movements of the affected region.  (Id. at 336.)  Dr. Vercammen-Grandjean reported that Plaintiff could sit for less than two hours in a workday and stand or walk for less than two hours in a workday; never lift or carry ten pounds; would require unscheduled breaks; could never twist, stoop, or crouch; had limited use of the hands; would be off task 25 percent, and would miss more than four days a month.  (Id. at 336-39.)

11

ii.    Dr. Amirtha Ajit's Opinion.

In a May 2023, Plaintiff had an initial visit with Dr. Ajit.  (Id. at 85-86.) Plaintiff denied depression or anxiety, had no cardiovascular abnormalities, had no pulmonary abnormalities, was characterized as obese but had no other abdominal abnormalities, had normal cervical range of motion, had no edema in the bilateral lower extremities, had no abnormalities of the skin, had decreased grip in the right hand, had normal mood, and had normal thought content.  (Id. at 85.)  However, Dr. Ajit also noted that Plaintiff's chief complaint on May 25, 2023, was pain in her upper right extremity and that Plaintiff's right hand turned blue and purple throughout the day.  (Id. at 82.)  During the May 25, 2023 visit, Dr. Ajit noted that Plaintiff "[c]ontinues to have pain in right upper extremity and in right hand along with flareups frequently" and that Plaintiff's right hand turned purple as she was talking to her attorney.  (Id.)

On July 23, 2023, Dr. Ajit completed a Medical Source Statement, indicating that Plaintiff "could sit for less than two hours in a workday and stand or walk for less than two hours in a workday; could rarely lift even lift less than ten pounds and never lift ten pounds; would require unscheduled breaks of thirty minutes, once or twice a week; could never climb; could rarely twist, stoop, or crouch; had symptoms severe enough to interfere with attention and concentration causing her to be off task twenty percent of the time; was capable of low stress work; and would miss more than four days of work a month."  (Id. at 3-5.)

iii.    Dr. Ammar Dahodwala's Opinion.

Dr. Dahodwala began treating Plaintiff in May of 2024 and found no cardiovascular abnormalities, no pulmonary abnormalities, no abdominal abnormalities, no specific musculoskeletal abnormalities, normal range of motion, no abnormalities of the skin, no focal neurological deficits, and normal mood.  (Dkt. 10-20 at 85-87.)  On September 24, 2024, Dr. Dahodwala completed a Medical Source Statement and concluded that the Plaintiff could sit for less than two hours in

12

a workday and stand or walk for less than two hours in a workday, could never lift ten pounds, would require unscheduled breaks of thirty minutes every one to two hours, could never twist, stoop, or crouch, could only spend twenty-five percent of the day handling, fingering, and reaching bilaterally, had symptoms severe enough to interfere with attention and concentration causing her to be off task twenty-five percent of the time, was incapable of even low stress work, and would miss more than four days of work a month.  (Id. at 69-70.)

### 3.    Analysis.

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that, through December 31, 2023, the date last insured, the claimant had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), with the following specific limitations: can lift and carry twenty pounds occasionally and ten pounds frequently; can stand and walk six hours in an eight-hour day; can sit six hours in an eight-hour day; can occasionally push and pull; can frequently climb, balance, stoop, kneel, crouch, and crawl; can frequently walk on uneven terrain or be exposed to heights; can frequently reach, handle, and finger with the right arm and hand; can perform simple tasks in a routine work environment; and can perform low stress work, which is defined as involving only occasional, simple decision-making and occasional changes in the work setting.

(Dkt. 10-13 at 11.)  In making this determination, the ALJ specifically considered the Treating Physicians' opinions, but found their opinions unpersuasive on the grounds that they were unsupported by, and inconsistent with, other evidence in the record.  (Id. at 23.)

Plaintiff contends that the ALJ improperly considered the persuasiveness of

her Treating Physicians' opinions.  (Dkt. 11 at 3.)  Because Plaintiff's claim was filed after March 27, 2017, the new regulations provide that an ALJ should not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. §§ 404.1520c(a).  Instead, the ALJ must evaluate each opinion's overall persuasiveness and articulate her conclusion by primarily considering the "supportability" and "consistency" of the opinions.  20 C.F.R. §§ 404.1520c(c); 416.920c(c).  The ALJ is not required to explain how she considered the nature of the relationship with the claimant, the frequency of examinations, or the doctor's specialization unless the ALJ concludes that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical.  See 20 C.F.R. § 404.1520c(b)(3).  Nonetheless, an ALJ must provide an explanation, supported by substantial evidence, if the ALJ rejects an examining or treating physician's opinion as unsupported or inconsistent.  See Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022).

Here, the ALJ rejected the Treating Physicians' opinions as unpersuasive on the grounds that they were unsupported by the Treating Physicians' "generally unremarkable findings on examination" and "[in]consistent with the other evidence in the record (such as other unremarkable treating physician examinations and the relevant consultative examination findings and opinions)."  (Dkt. 10-13 at 23 (citing Dkt. 10-11 at 94-98, 102-105; Dkt. 10-18 at 3-5, 337-39; Dkt. 10-20 at 69-70).)  However, the ALJ's conclusion is not supported by substantial evidence in the record and does not comply with SSR 03-2p.  See SSR 03-2p, 2003 WL 22399117 (Oct. 20, 2003).[6]

SSR 03-2p contains detailed guidance on evaluating CRPS-based disability claims.  See id.  "It discusses how CRPS is: (1) diagnosed; (2) treated; (3) identified

---

[6] Although Social Security Rulings do not have the force of law, the Social Security Administration is required to follow and rely upon them as precedents in adjudicating cases.  See Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007).

as a medically determinable impairment; (4) documented as a medically determinable impairment; and (5) evaluated." Amber P. v. Kijakazi, 2023 WL 2728720, at *2 (S.D. Cal. Mar. 30, 2023).  Critically, "CRPS is a disease for which objective findings can be minimal." Hunt v. Astrue, 2009 WL 1519543, at *4 (C.D. Cal. May 29, 2009).  Therefore, "[b]ecause clinical findings are of limited value with respect to CRPS, SSR 03-2p emphasizes that the severity of the disorder can be assessed instead through a longitudinal clinical record containing detailed medical observations, treatment, the individual's response to treatment, complications of treatment, and a detailed description of how the impairment limits the individual's ability to function and perform or sustain work activity over time." Deborah M. v. Berryhill, 2020 WL 7625483, at *6 (N.D. Cal. Dec. 22, 2020) (internal quotations omitted).

The ALJ's summary of Plaintiff's medical records recognizes that the Treating Physicians, namely Dr. Vercammen-Grandjean, have had the most longitudinal perspective about the nature and severity of Plaintiff's CRPS.  (See Dkt. 10-13 at 16, 18-23 (summarizing Dr. Vercammen-Grandjean's treatment of Plaintiff from January 2020 through April 2024).)  As detailed above, the record contains significant treatment notes recording the progression of Plaintiff's CRPS and her response to various medications and treatments.  Indeed, Dr. Vercammen-Grandjean specifically recognized unremarkable imaging results, and noted that the results actually helped to narrow Plaintiff's possible diagnoses to CRPS.  (See Dkt. 10-9 at 40.)  Moreover, the Treating Physicians maintained Plaintiff's CRPS diagnosis over several years and noted consistent complaints of pain and CRPS flare ups.  (See Dkt. 10-8 at 655, 682, 697; Dkt. 10-9 at 39, 40, 52, 93; Dkt. 10-11 at 79; Dk. 10-18 at 82, 217.)  Thus, the Court concludes that the ALJ's reliance on unremarkable physical examinations to discount the Treating Physicians' opinions related to Plaintiff's CRPS is inconsistent with the guidance contained in SSR 03-2p and the unique characteristics of CRPS. See, e.g., Deborah M., 2020 WL 7625483,

at *6 ("Since the ALJ' opinion focuses heavily on the diagnostic imaging results and Plaintiff's generally unremarkable physical examinations, which are of limited value for the reasons explained above, it is not clear that the ALJ evaluated the medical evidence in light of the unique characteristics of CRPS, Dr. Schadendorf's expertise in that area, and the guidance in SSR 03-2p. Accordingly, the medical evidence he cites is not a specific and legitimate reason to discount Dr. Schadendorf's opinion.").

Plaintiff further contends that the ALJ failed to properly consider the Treating Physicians' opinions regarding Plaintiff's absenteeism. (Dkt. 11 at 10-13.) Indeed, the Treating Physicians found that Plaintiff's CRPS symptoms would require her to be absent from work more than four days a month. (Dkt. 10-11 at 98; Dkt. 10-18 at 5, 339; Dkt. 10-20 at 71.) None of the consultative examiners' opinions or the State agency medical consultant's opinion, relied upon by the ALJ, discussed any level of absenteeism. (Dkt. 10-13 at 22-24.) In fact, Dr. Gregg Small, the orthopedic consultative examiner that the ALJ found to be persuasive, specifically noted that because "[CRPS] requires very specialized diagnosis and treatment" and because he "ha[d] no medical records" that he "would gladly defer to [Plaintiff's] treating physician's recommendations." (Dkt. 10-20 at 111.)

Thus, the Treating Physicians' opinions regarding Plaintiff's absenteeism stand uncontradicted in the record and the ALJ was required to give clear and convincing reason to reject them. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). However, the ALJ's RFC determination does not account for this limitation. (See Dkt. 10-13.) At the administrative hearing, the ALJ specifically asked the VE whether there was work available for an individual who would be absent from work two or more days a month. (Dkt. 10-13 at 48.) The VE indicated that an individual that would need to be absent that frequently would be "incapable of maintaining or sustaining any competitive employment." (Id.) Thus, by failing to account for Plaintiff's absenteeism as a limitation in the RFC, the ALJ

16

failed to consider her own complete hypothetical to the VE.

"Because the hypothetical question to the VE relied upon by the ALJ did not reflect all of Plaintiff's limitations, the ALJ could not rely on the VE's testimony to make the determination that Plaintiff was able to perform jobs that existed in the national economy."  Garrett v. Berryhill, 2017 WL 950467, at *11 (E.D. Cal. Mar. 10, 2017); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (in posing a hypothetical to VE "an ALJ is not free to disregard properly supported limitations in providing a hypothetical to a vocational expert, in a social security disability proceeding.").  Accordingly, the Court concludes that the ALJ's RFC determination failed to account for Plaintiff's absenteeism limitation and the VE's testimony that such a limitation would render Plaintiff incapable of maintaining or sustaining competitive employment.  In sum, the ALJ's RFC is not supported by substantial evidence in the record.

**B.      Plaintiff Is Entitled To Remand With Direction To Award Benefits.**

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court."  Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion").  The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits.  Generally, remand for a direct award of benefits is appropriate only where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  Garrison, 759 F.3d at 1020.  Here, all three elements are satisfied.

The ALJ's determination that Plaintiff is not disabled rested on her finding that Plaintiff's Treating Physicians' opinions were unpersuasive. As explained above, the Court has determined that the ALJ improperly discredited the Treating Physicians' opinions. Indeed, there is simply no basis in the record to reject the opinions of the Treating Physicians with regard to Plaintiff's symptoms and limitations related to CRPS. Accordingly, the opinion of the Treating Physicians that Plaintiff's CRPS symptoms would require her to be absent from work more than four days a month must be accepted as true. The VE testified unequivocally that if this limitation were accepted, then Plaintiff would be incapable of maintaining or sustaining competitive employment. (Dkt. 10-13 at 48.) Accordingly, there is no reason to remand for further proceedings because the ALJ would be required to find that Plaintiff was disabled during the relevant period.

The Court does not remand for a direct award of benefits lightly. Indeed, the Court exercised restraint by initially remanding for further proceedings when this case was filed back in 2023. (Dkt. 10-14 at 30-40.) However, it has now been more than 6 years since Plaintiff initially applied for DIB. (Id. at 31.) Based on the current state of the record, it is patently obvious that Plaintiff is entitled to an award of benefits. Therefore, the Court will not abide any further delay. Accordingly, the case is remanded to the Commissioner with direction to award Plaintiff benefits immediately.

\\

\\

\\

\\

18

## VII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter with directions to award Plaintiff benefits immediately.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  March 30, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

19